## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | |
| | : | 3:16-cr-00003-TCB-RGV |
| TONIA WILLIAMS, *et al.* | : | |

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

On January 6, 2016, a federal grand jury in the Northern District of Georgia returned a seventy-five count indictment against twenty-five defendants, all but one of whom were correctional officers employed by the Georgia Department of Corrections ("GDOC"), following an investigation by the Federal Bureau of Investigation ("FBI") during which the defendants allegedly accepted thousands of dollars in bribe payments from a purported drug trafficker, who actually was an undercover FBI confidential informant, in return for their assistance with and protection of the delivery of multiple kilograms of sham cocaine and methamphetamine, while wearing their GDOC uniforms. [Doc. 1].[1]  Defendant Tonia Williams ("Williams"), one of those correctional officers, is charged with three counts of attempted Hobbs Act extortion under color of official right, in violation of

---

[1] The listed document and page numbers in citations to the record in this Order and Report and Recommendation refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

18 U.S.C. § 1951(a), and three counts of attempted distribution of cocaine and methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 846 and 18 U.S.C. § 2. [Doc. 1 at 12-14].

Williams has filed a motion to dismiss the attempted Hobbs Act extortion charges in counts 19, 21, and 23, [Doc. 276], and a motion to dismiss the prosecution against her based on outrageous government conduct and, in the alternative, to allow an entrapment defense, [Doc. 295], as well as a motion for a bill of particulars, [Doc. 278], and a motion to reveal confidential informants, [Doc. 279], all of which the government opposes, [Docs. 387, 399, 409, & 427].[2] For the reasons that follow,

---

[2] Williams also has filed a motion in limine and for severance of defendants and counts, see [Doc. 277], in which she asserts that "if the government intends to introduce the post arrest statements of non-testifying co-defendants in the trial of Counts Eighteen through Twenty-Three, she is entitled to a severance pursuant to Bruton v. United States, 391 U.S. 123 (1968) and its progeny[,] [o]r, in the alternative, [she] moves in limine to exclude from admission any of her co-defendant's, pre or post arrest, statements which might violate Bruton, during the trial of her case," [id. at 4]. In her motion, Williams also asserts that "she should be severed from the trial of the remaining officers charged in this case regarding the other sixty-nine [] [c]ounts in which she is not charged, because she is misjoined with those defendants in those counts contrary to Rule 8(b) of the Federal Rules of Criminal Procedure." [Id.]. During a telephone conference held on August 29, 2016, the government acknowledged that there is a potential Bruton issue with respect to co-defendants Travonne Ferrell and Tacowan Fluellen, who are charged in four of the same counts as Williams, and the government stated that it does not oppose Williams' motion for severance with respect to those counts in which she is charged with Travonne Ferrell and Tacowan Fluellen if the Bruton issue remains at the time of trial. See [Doc. 424]. The government added that any potential Bruton issue with respect to co-defendant Phoenicia Minor, who also is charged in two counts with Williams, no longer exists since Phoenicia Minor entered a guilty plea on July 14, 2016. See [id.; Doc. 382]. Several other co-defendants have entered guilty pleas as well, and because Williams'

Williams' motion for a bill of particulars, [Doc. 278], is **GRANTED IN PART** and **DENIED IN PART**, and her motion to reveal confidential informants, [Doc. 279], is **DENIED**, and it is **RECOMMENDED** that her motion to dismiss counts 19, 21, and 23, and her motion to dismiss the prosecution against her, [Docs. 276 & 295], be **DENIED**, and her alternative request to allow an entrapment defense is **DEFERRED** to the District Judge.

## I.  INTRODUCTION

The indictment charges that on or about February 26, 2015, March 6, 2015, and March 13, 2015, Williams and other co-defendants named in the indictment "believed they were providing protection to a high-level drug trafficker who was transporting multiple grams of cocaine and methamphetamine in the Locust Grove area, in the Northern District of Georgia, and elsewhere" and that in "exchange for payment, [they] agreed to wear their GDOC uniforms, or carry indicia of their statuses as GDOC officers, and accompany the purported drug trafficker while he delivered purported narcotics to other purported drug traffickers, or personally

---

motion raises a potential <u>Bruton</u> issue that could impact the scheduling of trial for the remaining defendants, her motion in limine and for severance of defendants and counts, [Doc. 277], is hereby **DEFERRED** to the Honorable Timothy C. Batten, Sr., the United States District Judge assigned to this case.  The Court also notes that other defendants, including Tacowan Fluellen, Tramaine Tucker, and Jeremy Fluellen, who have not entered guilty pleas, also initially filed motions to sever, <u>see</u> [Docs. 304, 311, & 315], but these motions have since been withdrawn, <u>see</u> [Docs. 420, 421, & 423].

transport the narcotics themselves." [Id. at 3 ¶¶ 10-11, 11-14 ¶¶ 33-38]. The indictment further charges that Williams, along with her co-defendants "believed their uniformed presence would assist the drug trafficker with his transport of narcotics by protecting the drug deals from law enforcement interdiction," and that they "assisted with the delivery of purported narcotics by placing them in waiting vehicles at delivery locations in the Northern District of Georgia, or by assisting with the placement of the narcotics," all while in their GDOC uniforms or while carrying indicia of their statuses as GDOC officers. [Id. at 3-4 ¶¶ 12-13]. The indictment charges that Williams and her co-defendants accepted "thousands of dollars in bribe payments from the purported drug trafficker" in return for their actions. [Id. at 4 ¶ 14].

## II.  DISCUSSION

A.    **Motion to Dismiss Counts 19, 21, 23, [Doc. 276]**

Williams moves to dismiss counts 19, 21, and 23 of the indictment which charge her with attempted Hobbs Act extortion under color of official right, in violation of 18 U.S.C. § 1951(a). [Doc. 276]. Williams contends that these counts "do not adequately allege the essential elements of an attempted Hobbs Act extortion under color of official right, to wit: (1) the element of an 'official act'; (2) the element of an extorted 'victim'; (3) the 'quid pro quo' component; (4) the inherent coercive nature of [Williams'] act; and (5) the element of specific intent necessary for an

attempt." [Id. at 3 (emphasis omitted)]. Williams also asserts that these counts fail to give her fair notice as to what she is called upon to defend, and to adequately allege the essential facts constituting the offenses charged, and she further argues that these counts "must be dismissed on the grounds of duplicity, because each count impermissively [sic] combines two distinct offenses, i.e., the attempted extortion by [] Williams, and a separate attempted extortion by her co-defendant, each premised upon a separate and distinct agreement regarding an alleged extortion with terms completely different to the other." [Id. at 3-4 (citations omitted)]. Williams also maintains that, even if these alleged defects in the indictment do not require dismissal of these counts, "dismissal is warranted when viewing all these defects and their cumulative prejudicial effect collectively." [Id. at 4].[3]

In response, the government contends that "the Supreme Court's framework for determining 'official acts,' as recently set forth in *McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016), effectively establishes that a defendant who is alleged to have worn her law enforcement uniform for the purpose of deterring other law enforcement officers from investigating criminal wrongdoing would constitute an

---

[3] Alternatively, Williams moves the Court to grant her motion for a bill of particulars "so that she can clearly identify how the government contends she violated the essential elements of the crimes charged against her; so as to avoid unfair surprise, and enable her to adequately prepare for trial." [Doc. 276 at 4]. Williams' motion for a bill of particulars will be addressed separately hereinafter.

'official act,' since it would be designed to exert pressure on another government official regarding his or her formal exercise of government power." [Doc. 387 at 5]. The government also argues that "the case law makes clear that Hobbs Act bribery counts do not require the allegation of an extorted 'victim' outside the extortion scheme, or an allegation that the official induced the payment of a bribe through coercive conduct," [id.], and "the [i]ndictment repeatedly alleges a sufficient quid pro quo that consists of Williams accepting cash bribe payments (the quid) in exchange for wearing her GDOC uniform to protect drug deliveries (the quo)," [id. (emphasis omitted)].  The government further asserts that "the [i]ndictment clearly alleges intentional conduct sufficient to make out a criminal violation and thus is more than sufficient to meet the pleading requirements set forth by Rule 7(c) of the Federal Rules of Criminal Procedure."  [Id.].

The government also disputes Williams' contention that counts 19, 21, and 23 are duplicitous, arguing that "the doctrine barring duplicitous counts applies where multiple offenses are charged against a single defendant in a single count, not where one offense is charged against multiple defendants in a single count," as in these contested counts.  [Id. at 5-6].  Finally, with respect to Williams' contention that the cumulative effect of the alleged deficiencies in the indictment deprives her of adequate notice of the charges against which she must defend, the government responds that "the introduction section of the [i]ndictment, which is incorporated

by reference into each and every count of the [i]ndictment, makes the illegal *quid pro quo* allegations against Williams crystal clear and certainly enough to withstand a motion to dismiss under Rule 12(b) of the Federal Rules of Criminal Procedure." [Id. at 6].

1.    ***Standard on Motion to Dismiss***

"'In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment, and more specifically, the language used to charge the crimes.'" United States v. Honeycutt, Criminal Action No. 2:12-CR-00022-RWS, 2014 WL 2003029, at *4 (N.D. Ga. May 14, 2014), adopted at *1 (emphasis omitted) (quoting United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006)); see also United States v. Kopp, Criminal Action No. 1:12–CR–0269–RWS, 2014 WL 2154199, at *4 (N.D. Ga. May 21, 2014), adopted at *1, aff'd, 778 F.3d 986 (11th Cir. 2015) (alteration in original) (citation and internal marks omitted) ("It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial."). "'Generally, an indictment is sufficient if it: 1) sets forth the elements of the offense in a manner which fairly informs the defendant of the charge against which [s]he must defend and 2) enables [her] to enter a plea which will bar future prosecution for the same offense.'"[4]

---

[4] "[I]f the indictment tracks the language of the statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which

United States v. Germany, 296 F. App'x 852, 862 (11th Cir. 2008) (unpublished) (internal citation omitted) (quoting United States v. Poirier, 321 F.3d 1024, 1028 (11th Cir. 2003)).  The Eleventh Circuit has held that "'when analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations.'"  Id. (internal citation omitted) (quoting Poirier, 321 F.3d at 1029).  Furthermore, "[i]f an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge."  United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998) (citation omitted).  "Similarly, if the facts alleged in the indictment warrant an inference that the jury found probable cause to support all the necessary elements of the charge, the indictment is not fatally deficient on Fifth Amendment grounds."  Id. (footnote and citation omitted).

### 2.    *Attempted Hobbs Act Extortion*

Counts 19, 21, and 23 charge Williams with attempted Hobbs Act extortion under color of official right, in violation of 18 U.S.C. § 1951(a).  See [Doc. 1].  The

---

[s]he is charged."  United States v. Slawson, Criminal Case No. 1:14-CR-00186-RWS-JFK, 2014 WL 5804191, at *5 (N.D. Ga. Nov. 7, 2014), adopted by 2014 WL 6990307, at *1 (N.D. Ga. Dec. 10, 2014) (citations and internal marks omitted).  And, "[i]n judging the sufficiency of an indictment, courts are cautioned to use a broad and enlightened standpoint of common sense and right reason rather than [a] narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding."  Id. (second alteration in original) (citations and internal marks omitted).

Hobbs Act makes it unlawful for anyone to attempt to obstruct, delay, or affect commerce by, among other things, extortion.  18 U.S.C. § 1951(a).  The statute defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  To prove Hobbs Act extortion under color of official right, the government must show: "(1) that a public official [knowingly] obtained property from another in exchange for performance or nonperformance of [her] official duties; and (2) that this extortionate activity affected interstate commerce."  United States v. Adair, 951 F.2d 316, 318 (11th Cir. 1992) (footnote and citation omitted).

Williams argues that the contested counts are deficient with respect to several elements of the charged offense of attempted Hobbs Act extortion, but many of her arguments are unavailing at this stage of the proceedings where the "sufficiency of a criminal indictment is determined from its face." United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) (per curiam) (citations omitted); see also Russell v. United States, 369 U.S. 749, 791 (1962) ("There is no such thing as a motion for summary judgment in a criminal case."); United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam) ("There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence.").  For the reasons that follow, the Court finds that the indictment

adequately charges the essential elements of attempted Hobbs Act extortion, and

"the government is entitled to present its evidence at trial and have its sufficiency

tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29."

Salman, 378 F.3d at 1268 (citation omitted).

### 3.    *Contested Counts*

Counts 19, 21, and 23 are substantially similar in that each count charges that

Williams and a co-defendant,[5] both of whom were:

> [GDOC] officers at the time, attempted to affect, in any way and
> degree, commerce, and the movement of articles and commodities in
> commerce, knowingly by extortion, as those terms are defined in Title
> 18, United States Code, Section 1951; that is, the defendants unlawfully
> obtained property from another, in the form of United States currency
> not otherwise due to them, with that person's consent, in exchange for
> assisting with a purported drug transaction, said consent having been
> induced under color of official right, in violation of Title 18, United
> States Code, Section 1951(a).

[Doc. 1 at 12-14 ¶¶ 34, 36, 38].   The allegations in the introduction section of the

indictment are incorporated by reference into each of the counts, [id. at 4 ¶ 15], and

in relevant part, those allegations state:

> 10.   On the dates alleged herein, the defendants believed they were
> providing protection to a high-level drug trafficker who was
> transporting multiple kilograms of cocaine and methamphetamine in
> the Locust Grove area, in the Northern District of Georgia, and
> elsewhere.

---

[5] The co-defendant in count 19 is Travonne Ferrell, the co-defendant in count 21 is Phoenicia Minor, and the co-defendant in count 23 is Tacowan Fluellen.  [Doc. 1 at 12-13 ¶¶ 34, 36, 38].

11. In exchange for payment, the correctional officer defendants agreed to wear their GDOC uniforms, or carry indicia of their statuses as GDOC officers, and accompany the purported drug trafficker while he delivered purported narcotics to other purported drug traffickers, or personally transport the narcotics themselves. . . .

12. The defendants believed their uniformed presence would assist the drug trafficker with his transport of narcotics by protecting the drug deals from law enforcement interdiction.  Specifically, the defendants believed that if they were stopped by law enforcement while transporting the narcotics, the police would not search their vehicles because the defendants were wearing their GDOC uniforms or were carrying indicia of their statuses as correctional officers.

13.  In furtherance of the purported drug trafficking, the defendants, while in GDOC uniform, or while carrying indicia of their statuses as GDOC officers, assisted with the delivery of purported narcotics by placing them in waiting vehicles at delivery locations in the Northern District of Georgia, or by assisting with the placement of the narcotics, all while believing that the narcotics would be picked up by other drug traffickers.

14.  In return for their assistance with the purported drug trafficking, the defendants accepted thousands of dollars in bribe payments from the purported drug trafficker.

[Id. at 3-4 ¶¶ 10-14].

### 4.   *Analysis of Arguments*

The allegations of the indictment track the language of the statute, covering every essential element of attempted Hobbs Act extortion, and include a statement of facts that clearly provides Williams with adequate notice of the charges against which she must defend.  See generally [Doc. 1].  Williams complains that the indictment does not adequately allege several elements of attempted Hobbs Act

extortion, but many of her arguments stray beyond the proper scope of the Court's consideration in ruling on the sufficiency of the indictment.  For example, Williams asserts that her duties as a correctional officer were confined within the walls of GDOC facilities and that discovery reflects that the condition that she wear her uniform "was unilaterally added by the undercover government agent directing the sting operation after she had agreed to participate."  [Doc. 276 at 10].  However, these contentions concern matters of proof and whether the government can obtain a conviction, not whether the indictment sufficiently charges attempted Hobbs Act extortion.  When measured against the appropriate standard, and giving the indictment a common sense construction, the facts alleged in the contested counts "warrant an inference that the jury found probable cause to support all the necessary elements of the charge[.]"  Fern, 155 F.3d at 1325 (footnote and citation omitted).

Each of the contested counts specifically alleges that Williams "attempted to affect, in any way and degree, commerce, and the movement of articles and commodities in commerce, knowingly by extortion, as those terms are defined in Title 18, United States Code, Section 1951," in that she "unlawfully obtained property from another, in the form of United States currency not otherwise due to [her], with that person's consent, in exchange for assisting with a purported drug transaction, said consent having been induced under color of official right," [Doc. 1 at 12-14 ¶¶ 34, 36, 38], and the allegations incorporated by reference from the

introduction provide further details about the attempted Hobbs Act extortion charges.

A common sense and practical reading of the indictment reveals that Williams is charged with accepting bribe payments in return for providing protection to an individual she believed was a drug trafficker by wearing her GDOC uniform while accompanying the would-be drug dealer as he transported and delivered purported narcotics. The allegations of the indictment make it clear that Williams' capacity as a uniformed GDOC officer was essential to the quid pro quo arrangement she allegedly had with the person she believed to be a drug trafficker as the indictment specifically charges that "[i]n exchange for payment, the correctional officer defendants agreed to wear their GDOC uniforms, or carry indicia of their statuses as GDOC officers, and accompany the purported drug trafficker while he delivered purported narcotics to other purported drug traffickers, or personally transport the narcotics themselves." [Id. at 3 ¶ 11]. The indictment further alleges that Williams and her co-defendants "believed their uniformed presence would assist the drug trafficker with his transport of narcotics by protecting the drug deals from law enforcement interdiction." [Id. at 3 ¶ 12]. As the government points out, the Eleventh Circuit and other courts have repeatedly ruled that similar conduct involving law enforcement officers providing assistance and protection to drug dealers in return for bribes akin to that charged in the instant indictment falls within

the ambit of the Hobbs Act.  See Adair, 951 F.2d at  318 (affirming conviction for Hobbs Act extortion under color of official right of police chief who provided police protection for the shipment of illegal liquor in exchange for cash payments); United States v. Glass, 709 F.2d 669, 671 (11th Cir. 1983) (per curiam) (affirming conviction for Hobbs Act extortion under color of official right of sheriff who agreed to accept payment for protection of sham drug shipment); see also United States v. Solomon, 766 F.3d 360, 361-63 (3d Cir. 2014) (affirming sentence of police chief convicted of Hobbs Act extortion under color of official right who agreed to provide police protection for sham FBI drug shipments by wearing his uniform and watching the shipment from his police car); United States v. Carr, 303 F. App'x 166, 167 (5th Cir. 2008) (unpublished) (affirming sentence of officer convicted of Hobbs Act extortion under color of official right for twice using his law enforcement position to escort sham drug shipments); United States v. Partida, 385 F.3d 546, 551, 556-57, 561 (5th Cir. 2004) (affirming convictions of law enforcement officers of Hobbs Act extortion under color of official right where they used their patrol cars to escort sham drug shipments).[6]

---

[6] Williams' appeal for application of the rule of lenity fails as well because the "rule applies only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" Ocasio v. United States, 136 S. Ct. 1423, 1434 n.8 (2016) (quoting Muscarello v. United States, 524 U.S. 125, 138–139 (1998)).  While Williams is correct that the rule of lenity has been applied to "ambiguous applications of the Hobbs Act," [Doc. 276 at 12-13

### a. __McDonnell__

The parties devote a substantial amount of their arguments to discussion of the Supreme Court's recent ruling in McDonnell, in which it clarified the meaning of "official act" as defined in the federal bribery statute, 18 U.S.C. § 201. See [Doc. 387 at 5, 8-12; Doc. 405 at 3-13]. "Section 201(a)(3) defines an 'official act' as 'any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.'" McDonnell, 136 S. Ct. at 2367. The Supreme Court explained:

> The text of § 201(a)(3) sets forth two requirements for an "official act": First, the Government must identify a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a public official. Second, the Government must prove that the public official made a decision or took an action "on" that question, matter, cause, suit, proceeding, or controversy, or agreed to do so.

Id. at 2368. After evaluating the evidence presented at trial in view of this definition, the Supreme Court vacated the bribery convictions of the former Virginia Governor because the jury was not correctly instructed on the meaning of "official act," and

---

(citation omitted)], for the reasons discussed, it is not evident from the face of the indictment that this is such a case. Rather, the conduct charged in the indictment is consistent with prior criminal prosecutions under the Hobbs Act where law enforcement officers accepted bribe payments in return for providing assistance and protection to drug traffickers.

"it may have convicted Governor McDonnell for conduct that is not unlawful." <u>Id.</u> at 2375 (internal marks omitted).

Although both the government and Williams claim that the <u>McDonnell</u> decision supports their respective positions on the official action element of the contested Hobbs Act extortion charges, the Court is not convinced that <u>McDonnell</u> is dispositive of the pending motion to dismiss the indictment. First, "[t]he Supreme Court did not hold that section 201(a)(3) of the federal bribery statute necessarily had to be the source for the definition of official action for the purpose of defining the 'quo' in the quid pro quo requirement of honest services fraud and extortion under color of official right." <u>United States v. Silver</u>, No. 15-CR-093 (VEC), 2016 WL 4472929, at *6 n.8 (S.D.N.Y. Aug. 25, 2016).  Rather, the Supreme Court explained that the parties in <u>McDonnell</u> "had agreed to use the definition of official act from the federal bribery statute to define the 'official action' element of Hobbs Act extortion and honest services fraud," and "[i]n accordance with the parties' agreement, the district court had quoted that definition in its charge to the jury." <u>Id.</u> (citation omitted).  Hence, the erroneous jury instruction impacted all of the bribery convictions.  "Thus, it is not clear whether the definition of official action must—or even should—come from the federal bribery statute in every honest services fraud or extortion case." <u>Id.</u>

The ruling in McDonnell also is not dispositive of the pending motion because it did not concern the sufficiency of the charges in the indictment.  Instead, the Supreme Court vacated the bribery convictions due to an error in the jury instructions.  McDonnell, 136 S. Ct. at 2375.  While the full import of McDonnell will no doubt be debated and addressed at the trial of this case, at this stage of the proceedings, the question before the Court is whether the indictment adequately charges attempted Hobbs Act extortion under color of official right, and for the reasons already discussed and those that follow, the undersigned finds that it does.[7]

### b.    "Official Action" and "Quid Pro Quo"

Williams' arguments about the "official action" and "quid pro quo" elements are intertwined as she contends that since the indictment does not adequately allege that she engaged in any official action, it necessarily fails to allege that there was any quid pro quo.  Specifically, Williams maintains that "the indictment fails to charge [her] with any official action that is clearly established by settled or customary

---

[7] Moreover, if the definition of "official action" in McDonnell does control, the government persuasively argues that, considering only the allegations on the face of the indictment, counts 19, 21, and 23 adequately charge official action because the facts alleged in the introduction, which are incorporated by reference into these counts, charge that Williams wore "her GDOC uniform for the specific purpose of protecting drug deliveries from law enforcement interdiction on public roads." [Doc. 387 at 10].  The allegations are adequate to satisfy the two requirements for an "official act" on a challenge to the sufficiency of the indictment as the allegations identified a matter that may be brought before a public official and action that Williams agreed to take and took on that matter.

practice of her office." [Doc. 276 at 18]. Consequently, she argues, "where a payment is made in exchange for an official's act outside the scope of her office power, it cannot constitute the quid pro quo required by the Hobbs Act." [Id. at 17 (citation omitted)]. The problem with Williams' argument, as already discussed, is that the indictment specifically alleges that she and each co-defendant in the contested counts "unlawfully obtained property from another, in the form of United States currency not otherwise due to them, with that person's consent, in exchange for assisting with a purported drug transaction, said consent having been induced under color of official right," [Doc. 1 at 12-14 ¶¶ 34, 36, 38], and the additional facts alleged in the indictment that are incorporated by reference into these counts that the defendants wore their GDOC uniforms while accompanying a purported drug trafficker in return for bribe payments in order to provide protection from other law enforcement officers, provide sufficient details to "warrant an inference that the jury found probable cause to support" the "official action" and "quid pro quo" elements of the charge, Fern, 155 F.3d at 1325.

### c.   "Victim" and "Coercion"

Williams asserts that the indictment also fails to allege a "victim" of the alleged extortion outside of the extortionate scheme or any coercive act on her part. [Doc. 276 at 13-14, 19-20]. Williams complains that the indictment only alleges that the defendants "unlawfully obtained property from another," without identifying

the alleged victim of the extortion while inferring that the government was the victim.  [Id. at 15 (internal marks omitted)].  Williams argues that "the indictment recognizes that the government was not an innocent victim in the conduct alleged and instead initiated and was a willing participant in the extortion activities set out in the Hobbs Act counts of the indictment."  [Id. at 16].  Citing two cases in which Hobbs Act convictions were overturned because the purported victims willingly made the payments to the defendants and thus, were not extorted, Williams maintains that the allegations of the indictment similarly fail to allege that there was any actual victim of the extortion or coercion alleged in the indictment.  [Id. at 15 (citing United States v. Capo, 817 F.2d 947 (2d Cir. 1987) (en banc); United States v. Marchan, 32 F. Supp. 3d 753 (S.D. Tex. 2013))].  However, Williams's arguments are not persuasive.

The indictment does not identify the alleged "victim" by name but makes clear that Williams and her co-defendants allegedly accepted thousands of dollars in bribe payments from a purported drug trafficker in return for providing protection and assistance with purported drug trafficking.  [Doc. 1 at 3-4 ¶¶ 10-14].  The detailed allegations of the indictment, [Doc. 1], along with discovery provided by the government, see [Doc. 399 at 4, 6 n.3], sufficiently identify the purported drug trafficker who made the payments to Williams and her co-defendants charged in the Hobbs Act counts.  Williams' contention that there was no victim because the

government initiated the transactions fails because acceptance of a bribe payment by a public official in return for taking or refraining from taking official action constitutes extortion under color of official right under the Hobbs Act, regardless of who initiated the payment.  Evans v. United States, 504 U.S. 255, 267-69 (1992) (an affirmative act of inducement by a public official is not an element of the offense of Hobbs Act extortion under color of official right); Glass, 709 F.2d 674.  As the government correctly points out, [Doc. 387 at 16], the public official need not demand or induce the payments "because the coercive element is supplied by the existence of the public office itself," Adair, 951 F.2d at 318 (alteration, footnote, citation, and internal marks omitted).  Williams' reliance on cases where Hobbs Act convictions were overturned again is misplaced at this stage of the proceedings as the allegations of the indictment adequately allege attempted Hobbs Act extortion under color of official right since it is alleged that Williams received bribe payments from a purported drug trafficker in return for the official action of wearing her GDOC uniform to assist and protect the purported drug trafficker as he transported and distributed the purported drugs.  See id. (affirming conviction for Hobbs Act extortion under color of official right of police chief who provided police protection for the shipment of illegal liquor); Glass, 709 F.2d at 671 (affirming conviction for Hobbs Act extortion under color of official right of sheriff who arranged protection of sham drug shipment); see also Solomon, 766 F.3d at 360 (affirming sentence of

police chief convicted of Hobbs Act extortion under color of official right who agreed to provide police protection for sham FBI drug shipments by wearing his uniform and watching the shipment from his police car); Carr, 303 F. App'x at 167 (affirming sentence of officer convicted of Hobbs Act extortion under color of official right for twice using his law enforcement position to escort sham drug shipments); Partida, 385 F.3d at 546 (affirming convictions of law enforcement officers of Hobbs Act extortion under color of official right where they used their patrol cars to escort FBI sham drug shipments).

### d.    Specific Intent

Williams next argues that the indictment does not allege specific intent, which is required for the attempt offenses charged in the Hobbs Act counts.  [Doc. 276 at 20-21].  The government concedes that the words "specific intent" do not appear in the indictment, but it argues that they are unnecessary "so long as the allegation that the crime was committed with the requisite state of mind may be inferred from other allegations in the indictment."  [Doc. 387 at 20 (internal marks omitted) (quoting United States v. Gray, 260 F.3d 1267, 1283 (11th Cir. 2001))].  In United States v. Resendiz–Ponce, 549 U.S. 102, 107 (2007), the Supreme Court considered "whether the indictment was sufficient even though it did not specify the overt act that is an essential element of all attempt crimes," and "plainly stated that the word attempt in an indictment 'encompasses both the overt act and intent elements.'"  United

States v. Elk-Booth, 822 F. Supp. 2d 1089, 1092 (D. Mont. 2011), aff'd, 481 F. App'x

326 (9th Cir. 2012) (unpublished) (citation omitted).  The Supreme Court accepted

the government's argument that the indictment "implicitly alleged" the requisite

elements of the attempt offense by pointing to the relevant criminal statute and

identifying the date on which the defendant attempted the offense.  Resendiz–Ponce,

549 U.S. at 107-08.  Similarly, here, the indictment cites the relevant criminal statute

and specifically alleges that Williams attempted the offense of Hobbs Act extortion

under color of official right on the dates specified in the contested counts, and with

the additional facts alleged in the Introduction that are incorporated by reference

into these counts, the indictment sufficiently informs Williams of the elements of the

offense charged to satisfy the constitutional requirements for an indictment.  Id.;

Elk-Booth, 822 F. Supp. 2d at 1092–93.

### e.    Duplicity

Finally, Williams argues that counts 19, 21, and 23 must be dismissed because

they are duplicitous.  [Doc. 276 at 21-25].  She asserts that each count combines "two

distinct crimes into one count: (1) the attempt extortion based upon the agreement

between [] Williams and the payor; and (2) a separate attempt extortion premised

upon the agreement between the co-defendant and the payor."  [Id. at 23-24].  Thus,

Williams contends that "each count improperly charges two distinct Hobbs Act

extortion offenses."  [Id. at 24].  The government responds that "Williams conflates

separate offenses with separate violations of a single offense," [Doc. 387 at 20], and it argues that the contested counts are not duplicitous because they each only charge one offense, and "Rule 8 specifically permits one or more defendant[s] to be charged in a single count," [id. at 22].

"A duplicitous indictment charges two or more separate and distinct crimes in a single count." United States v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989) (per curiam) (citation omitted). "Duplicity, if uncorrected, can lead to the conviction of a defendant without unanimity among jurors respecting what offense has been committed, to prejudice against a defendant in a later double jeopardy defense, and to confusion respecting the admissibility of evidence." United States v. Campbell, No. 1:04–CR–0424–RWS, 2005 WL 6436621, at *7 (N.D. Ga. Oct. 24, 2005) (citation omitted). However, duplicity is not usually fatal to an indictment, see United States v. Robinson, 651 F.2d 1188, 1194 (6th Cir. 1981), and other courts have noted "that the rules regarding duplicity are pleading rules and, as such, the defendant's remedy is to move to require the prosecution to elect the charge within the count and that a duplicitous indictment is remediable by a jury instruction particularizing the offense charged in each count," United States v. James, 749 F. Supp. 2d 705, 711 (S.D. Ohio 2010), aff'd, 496 F. App'x 541 (6th Cir. 2012) (unpublished) (citation omitted). That is, generally, any confusion or risk of non-unanimity can be appropriately addressed and eliminated by special interrogatories and careful jury

instructions.  See United States v. Davis, 306 F.3d 398, 416 (6th Cir. 2002); United States v. Marshall, 75 F.3d 1097, 1111-12 (7th Cir. 1996); United States v. Pungitore, 910 F.2d 1084, 1136 (3d Cir. 1990).

Contrary to Williams' contention, the challenged counts are not duplicitous. Rather, as the government asserts and Williams' own argument acknowledges, each count charges only one offense by Williams.  See [Doc. 276 at 24; Doc. 387 at 20-23]. Each count includes a charge of attempted Hobbs Act extortion by the named co-defendant on the same date that Williams is charged with attempted Hobbs Act extortion, [Doc. 1 at 12-14 ¶¶ 34, 36, 38], but the joinder of two defendants in the same count does not render the count duplicitous as Rule 8(b) specifically provides that an "indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  Thus, Williams is not facing the risks of a conviction without unanimity among jurors respecting what offense has been committed or prejudice in a later double jeopardy defense that arise from a duplicitous indictment.  Moreover, any concerns about confusion respecting the admissibility of evidence can be adequately addressed with an appropriate jury charge and verdict form.  Accordingly, as with her other arguments, Williams' contention that the attempted Hobbs Act extortion counts

should be dismissed as duplicitous is without merit,[8] and it is **RECOMMENDED** that her motion to dismiss counts 19, 21, and 23 of the indictment, [Doc. 276], be **DENIED**.

## B.     Motion to Dismiss Prosecution, [Doc. 295]

Williams also moves to dismiss the prosecution against her on the grounds that "the degree of governmental participation in the offenses charged in this indictment went beyond mere entrapment and amounted to outrageous governmental conduct[.]"  [Doc. 295 at 17].  In the alternative, Williams moves to assert the defense of entrapment.  [Id. at 6-17].  The government responds that its actions did not amount to outrageous conduct that warrants dismissal, [Doc. 409 at 5-10], and it maintains that any ruling regarding the viability of an entrapment defense should be deferred to the District Judge for "determination at the time of trial, after the relevant evidence has been presented regarding the government's agents' inducement of Williams and her predisposition to commit the charged crimes."  [Id. at 10-14].

---

[8] Williams contends that, even if each of the alleged defects about which she complains do not alone require dismissal of the contested counts, "dismissal is warranted when viewing all these severe defects and their cumulative prejudicial effect collectively."  [Doc. 276 at 25].  However, having rejected each of her alleged defects in the indictment, there is no cumulative prejudicial effect, and this argument is without merit.

1.   *Dismissal Based on Outrageous Government Conduct*

In United States v. Russell, 411 U.S. 423 (1973), "the Supreme Court recognized outrageous governmental conduct as a legal defense." United States v. Haimowitz, 725 F.2d 1561, 1577 (11th Cir. 1984). "'Outrageous government conduct occurs when law enforcement obtains a conviction for conduct beyond the defendant's predisposition by employing methods that fail to comport with due process guarantees.'" United States v. Jayyousi, 657 F.3d 1085, 1111-12 (11th Cir. 2011) (citations omitted); see also United States v. Durham, 106 F. Supp. 3d 1301, 1306 (N.D. Ga. 2015) (citation omitted) ("Due process bars a conviction where 'the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'"). "Whether outrageous governmental conduct exists 'turns upon the totality of the circumstances with no single factor controlling' and the defense 'can only be invoked in the rarest and most outrageous circumstances.'" Haimowitz, 725 F.2d at 1577 (quoting United States v. Tobias, 662 F.2d 381, 387 (5th Cir. Unit B 1981)[9]); see also United States v. Rolon, 445 F. App'x 314, 322 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted).   Indeed, "the conduct must be so outrageous that it is fundamentally unfair." United States v. Ciszkowski, 492 F.3d

---

[9] In Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit.

1264, 1270 (11th Cir. 2007) (citing United States v. Ofshe, 817 F.2d 1508, 1516 (11th Cir. 1987)).  "Conduct may be deemed outrageous if 'the government instigates the criminal activity, provides the entire means for its execution, and runs the entire operation with only meager assistance from the defendant.'" Durham, 106 F. Supp. 3d at 1306 (quoting United States v. Puett, 735 F.2d 1331, 1335 (11th Cir. 1984)).

Williams argues that the government's conduct in this case was outrageous because the government "created, engineered and controlled the scheme constituting the basis of the instant prosecution," essentially "present[ing] a carefully designed plan of criminal acts, and defendants appear to have conformed their conduct to execute it." [Doc. 295 at 21-22 (citations omitted)].  In support of her motion to dismiss based on outrageous government conduct, Williams cites numerous cases, the majority of which are decisions from courts outside of this circuit.  See [id. at 17-23]; see also [Doc. 430 at 10 (citations and internal marks omitted) (arguing "federal courts have repeatedly dismissed prosecutions or reversed convictions on grounds of outrageous government conduct, where the government engineered and directed the criminal enterprise from start to finish" and citing cases from the Third and Ninth Circuits)].  However, as the government correctly contends, since the Supreme Court recognized the outrageous governmental conduct defense in 1973, no case has been dismissed by the Supreme Court or the Eleventh Circuit based on a finding of outrageous government conduct.

27

[Doc. 409 at 6 (citations omitted)]; see also United States v. Dixon, 626 F. App'x 959, 963 (11th Cir. 2015) (per curiam) (unpublished) (citations omitted) ("This Court has yet to see government conduct that rises to the level of outrageousness required for the defense to succeed."); United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998) (citation omitted) ("While the Supreme Court and this Court have recognized the possibility that government involvement in a criminal scheme might be so pervasive that it would be a constitutional violation, that standard has not yet been met in any case either before the Supreme Court or this Court."); Durham, 106 F. Supp. 3d at 1311 (citations omitted).  In fact, as recently as 2014, the Eleventh Circuit noted that it has "'never acknowledged the existence of the outrageous government conduct doctrine.'" United States v. Simmons, 557 F. App'x 833, 836 (11th Cir. 2014) (per curiam) (unpublished) (quoting Jayyousi, 657 F.3d at 1111).

Williams asserts that the fact that "no court in this Circuit has dismissed an indictment based upon outrageous conduct in over 40 years, . . . does not mean that there isn't a legal basis for such an action to be taken by the court in this instance." [Doc. 430 at 14].  However, the Court "is not persuaded that the [g]overnment's actions in the instant case meet the definition of outrageous conduct." United States v. Hyatt, 904 F. Supp. 1351, 1354 (M.D. Fla. 1994).  As the government argues, this "case involves an undercover source working for the government who arranged to have the defendants assist him with what they believed were drug transactions

while wearing their correctional officer uniforms," [Doc. 409 at 7 (citing [Doc. 1])], and "challenges to th[is] reverse sting method of police investigation have been rejected by this Court on numerous occasions," [id. at 8 (citations and internal marks omitted)]; see also Sanchez, 138 F.3d at 1413 (citations omitted).  In support of its argument, the government relies on Sanchez, and the Court agrees that this case is instructive.

In Sanchez, "the Bureau of Alcohol, Tobacco, and Firearms (ATF) received information from a confidential informant about a group of armed home invaders who would 'rip-off' narcotics from stash houses."  138 F.3d at 1412.  The "ATF agents contacted individuals suspected of being involved in home invasions," and "defendants voluntarily agreed to participate" after being informed "by these individuals that large amounts of narcotics could be stolen in a home invasion."  Id. at 1413-14.  The Eleventh Circuit found that the "conduct of the government here [did] not approach that demonstrable level of outrageousness the case law suggests would be necessary for reversal of these defendants' convictions," reasoning that "defendants were involved without any instigation from the government[,] [t]hey only had contact with the government agent after they had already agreed to participate," and "[t]he availability of defendants, their weapons, and vehicles was not the result of any governmental activity."  Id. at 1414.

Williams contends that <u>Sanchez</u> does not apply because "the government received no prior information suggesting [she] had ever engaged in criminal activity by introducing contraband into the prisons where she worked," but that the government nevertheless enticed her into participation in criminal activity. [Doc. 430 at 13]. However, the government asserts that although the confidential informant did initially receive information about prison guards who were willing to accept bribes, [Doc. 409 at 9], and while Williams may not have been specifically named in the initial information, she was thereafter recruited, not by the confidential informant, but by a co-defendant, and she also subsequently recruited other prison guards to join in the criminal conduct, [<u>id.</u> at 8]; <u>see also</u> <u>Haimowitz</u>, 725 F.2d at 1577 (noting defendant was brought into the scheme by a co-defendant, not by the government). And, even if, as Williams alleges, the government, through the confidential informant, targeted her by having a co-defendant offer economic enticement, [Doc. 295 at 4], the government's provision of an opportunity to participate in criminal activity does not constitute a violation of due process, <u>see</u> <u>Hyatt</u>, 904 F. Supp. at 1354 (citation omitted); <u>see also</u> <u>United States v. Savage</u>, 701 F.2d 867, 870 (11th Cir. 1983) (rejecting defendants' argument that they were targeted as they were "merely caught in the trap the government set for those who were willing to take the bait," and finding "nothing outrageous in the government's activity"). "The Eleventh Circuit was unpersuaded that the [g]overnment's

invitation to participate in a crime rose to the level of misconduct, and this Court is equally unpersuaded." Durham, 106 F. Supp. 3d at 1307 (rejecting arguments that the crime was "wholly instigated by the [g]overnment"). Thus, Williams' availability for the crimes charged, her alleged recruitment of two other prison guards, and her alleged participation in sham drug transactions "was the result of [her] activity, not the [g]overnment's." Id.

Williams also contends that the "government orchestrated everything." [Doc. 430 at 13-14]. In particular, she asserts that it "provided the faux drugs[,] the money[,] and the vehicles the defendants used to transport and deliver the purported drugs to the Walmart parking lot." [Id. at 14]. However, "government infiltration of criminal activity is a 'recognized and permissible means of investigation' . . . 'even though the government agent supplies something of value to the criminal.'" Tobias, 662 F.2d at 386 (citations omitted). "The fact that government agents may supply . . . illegal drugs or provide other essential services does not necessarily constitute misconduct." Sanchez, 138 F.3d at 1413 (citation omitted). Williams and the other charged correctional officers are alleged to have supplied their uniformed presence to assist and protect the transportation of the drugs. Thus, Williams has failed to show that the government "ran the entire operation with only meager assistance from the defendants." Tobias, 662 F.2d at 386 (citation omitted).

Williams' arguments "boil down to the assertion that the [g]overnment lured [her and the other defendants] into involving [them] in a purported [drug trafficking scheme]," but "such allegations fall[] far short of the outrageous and shocking government conduct required to establish a due process violation demanding dismissal."  Durham, 106 F. Supp. 3d at 1307; see also id. (footnote, citation, and internal marks omitted) ("[G]overnment luring does not itself create an outrageous government conduct defense.").  The Court notes that "throughout this situation [Williams] could have merely declined when approached about becoming involved in an illegal scheme," but she was offered money, and she allegedly "committed these crimes because [she] wanted to receive the money."  Hyatt, 904 F. Supp. at 1354.  Thus, "the responsibility for the exercise of [her] judgment must lie with [her]."  Id.  "Without binding precedent that actually establishes the existence of the outrageous government conduct defense–or precedent that directly forbids the kind of reverse sting operation used here–[Williams'] . . . argument cannot succeed."  Dixon, 626 F. App'x  at 963 (emphasis and citation omitted).  Accordingly, it is **RECOMMENDED** that Williams' motion to dismiss the prosecution based on outrageous government conduct, [Doc. 295], be **DENIED**.[10]

_____

[10] Williams has requested a hearing on this motion, see [Doc. 295 at 23], but "without sufficient factual allegations to support an outrageous-government-conduct defense, the Court need not hold an evidentiary hearing on the issue," United States v. Galvis-Pena, Criminal Action File No. 1:09-cr-25-TCB-CCH-4, 2012 WL 425240, at *5 (N.D. Ga. Feb. 9, 2012) (citation omitted).  Moreover, Williams'

2.    *Entrapment Defense*

Williams argues, in the alternative, that she is entitled to a defense of entrapment.  [Doc. 295 at 6-17].  The government responds that this argument is premature and should be deferred to the District Judge to be decided at trial.  [Doc. 409 at 1, 10-14].

"The entrapment defense involves two separate elements: (1) [g]overnment inducement of the crime, and (2) lack of predisposition on the part of the defendant."  United States v. Isnadin, 742 F.3d 1278, 1297 (11th Cir. 2014) (emphasis and citations omitted).  The "'defendant bears the initial burden of production as to the government inducement; once the defendant meets this burden, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime.'"  United States v. Sistrunk, 622 F.3d 1328, 1333 (11th Cir. 2010) (quoting United States v. Ryan, 289 F.3d 1339, 1343 (11th Cir. 2002) (per curiam)).  "A defendant can show inducement by [] producing evidence sufficient to create a jury issue 'that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.'"  United States v. Toussaint, 627 F. App'x 810, 814 (11th Cir. 2015) (per

arguments "regarding outrageous governmental conduct raise questions that are intermeshed with questions going to the merits of the case because they would require proof of the criminal conduct alleged in the indictment.  Therefore, they are not capable of resolution without a 'trial of the general issue' under Fed. R. Crim. P. 12(b)(2)."  Id. (footnote omitted).

curiam) (unpublished) (quoting United States v. Brown, 43 F.3d at 618, 623 (11th Cir. 1995)). "The defendant meets this burden if [s]he produces evidence that the government's conduct included some form of persuasion or mild coercion." Id. (citation omitted). "Predisposition may be demonstrated [] by a defendant's ready commission of the charged crime" or "by evidence that the defendant was given opportunities to back out of illegal transactions but failed to do so." Isnadin, 742 F.3d at 1298 (internal citations omitted) (quoting Brown, 43 F.3d at 625).

Williams asserts that she is entitled to the defense of entrapment because she was induced by the government and she was not predisposed to commit the charged offenses. [Doc. 295 at 6-17]. In particular, Williams claims that she was lured into the commission of the crimes charged with the promise of money and other benefits, that she initially declined to participate, that the government made repeated attempts to persuade her, and that the cumulative effect of the government's tactics was much more than mere suggestion. [Doc. 295 at 7-15; Doc. 430 at 2-5]. Williams also asserts that "there is zero history of [her] predisposition to distribute drugs prior to the government's substantial effort to entice her to participate in the charged offenses." [Doc. 295 at 16]. The government argues that Williams' motion to assert an entrapment defense is premature, [Doc. 409 at 1], and the Court agrees.

"A defense of entrapment is generally not appropriate at the pretrial stage because it is a fact intensive inquiry." United States v. McGill, No. 1:14-cr-167-WSD, 2014 WL 4829303, at *5 (N.D. Ga. Sept 29, 2014), adopted at *3, aff'd, 634 F. App'x 234 (11th Cir. 2015) (per curiam) (unpublished) (citations omitted). "An entrapment defense is a question for the jury, unless the evidence is so clear and convincing that it may be ruled on by a trial judge as a matter of law." Id. (citation omitted); see also Brown, 43 F.3d at 622 (citation omitted) ("Entrapment is generally a jury question."). "Accordingly, entrapment is not an appropriate issue to consider in a pre-trial motion to dismiss the indictment." McGill, 2014 WL 4829303, at *5 (citing United States v. Freed, 401 U.S. 601, 607 (1971)); see also United States v. Williams, No. 6:13-cr-26-Orl-36TBS, 2014 WL 117091, at *4 (M.D. Fla. Jan. 13, 2014) (citing United States v. Gates, 351 F. App'x 362, 366 (11th Cir. 2009) (per curiam) (unpublished); United States v. Miller, 71 F.3d 813, 815 (11th Cir. 1996); Brown, 43 F.3d at 622) ("[W]hile a court may conclude that the evidence is such that a reasonably jury must find that the defendant was entrapped as a matter of law, such a determination is made *after* the court has heard the evidence at trial, not upon a pretrial motion to dismiss *before* the evidence has been presented."). As the government correctly contends, "Williams has not cited a single case in this Circuit, and the Court is unaware of one, where a court has found entrapment as a matter of law before the case has even

gone to trial." Williams, 2014 WL 117091, at *4; see generally [Docs. 295 & 430].[11]

Accordingly, Williams' motion to allow an entrapment defense, [Doc. 295], is

**DEFERRED** to the District Judge.

## C.     Motion for Bill of Particulars, [Doc. 278]

Williams has filed a motion for a bill of particulars, [Doc. 278], in which she

requests particulars with regard to several counts of the indictment, which may be

summarized as follows:

(a) where, including the locations and jurisdictions within the district
and elsewhere, the criminal conduct that she is alleged to have
participated in occurred;

(b) how she along with other named defendants were "aided and
abetted by one another";[12]

---

[11] Williams cites United States v. Graves, 556 F.2d 1319 (5th Cir. 1977), in
support of her assertion that a claim of entrapment does not present a jury question
and it is proper for a court to entertain her pretrial motion. See [Doc. 430 at 6-7].
However, in Graves, the court noted that defendants' "motion presented the
question whether this conduct violated due process principles, as suggested in
Russell, to such an extent that judicial processes could not be invoked against them,"
and it found that "[s]ince their defense was predicated entirely on alleged
governmental misconduct, and not upon the subjective predisposition of the
[defendants], it was an appropriate question for the court to resolve on a pretrial
motion." 556 F.2d at 1322. Here, Williams has argued both that the government
induced her and that she was not predisposed to commit the crimes. See generally
[Docs. 295 & 430]. Thus, Williams' reliance on Graves is misplaced. Decisions of the
Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh
Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[12] In particular, Williams seeks the following:

1.     Does the government allege that Defendant Tonia Williams

(c) who was the alleged victim of extortion, who owned the property or United States currency, who provided consent, and what are the facts supporting that consent was induced by Williams under color of official right;

(d) what conduct Williams is alleged to have engaged in during the alleged Hobbs Act violations and the amount obtained by Williams and/or attributable to her conduct for the official act as opposed to her agreement to transport drugs;

(e) what are the facts supporting the allegations that the acts of extortion affected or would have affected interstate commerce;

(f) provide the police reports for any random traffic stop of targeted guards transporting the sham contraband during the undercover operation;

(g) which of the prison guards that were recruited by the government were propositioned to engage in sexual relations by the government's confidential informant; which recruits actually engaged in a sexual relationship with the confidential informant; and what other offers of remuneration were made by the confidential informant to the recruited prison guards; and

(h) which of the recruited prison guards named in the indictment initially refused to participate in bringing contraband into the prison

---

agreed to assist the co-defendant named in those Counts to commit the charged crime? Or in the alternative, the co-defendant named therein allegedly agreed to assist Tonia Williams to commit the attempted drug distribution?

2.   By which one(s) of the six means possible did Tonia Williams (or the named co-defendant) allegedly violate 18 U.S.C. § 2. Was it by aiding, abetting, counseling, commanding, inducing, or procuring one another to participate in the offenses charged?

[Doc. 278 at 8].

and/or transporting drugs or other contraband outside the prison walls.

[Doc. 278 at 6-11].

In its response, the government states that, with respect to request (a), "elsewhere" was used in the indictment because "most of the defendants, including Williams, lived in the Southern District of Georgia, and therefore likely communicated with the FBI's source via recorded phone calls and text message[s] that may have originated outside the Northern District of Georgia." [Doc. 427 at 6-7]. With respect to request (c), the government has identified the "'victim' of the Hobbs Act extortion in this case [as] the government's [confidential informant]" and that the confidential informant "clearly paid the bribes using government funds as part of a covert FBI investigation," [id. at 7], and with respect to request (f), the government states that it is aware of only one "traffic stop by law enforcement not associated with the FBI's investigation" based on "recent proffer statements of a cooperating defendant to whom this happened" that have already been provided to Williams, [id. at 8]. The government contends that the remaining requests for particulars enumerated in Williams' motion are not proper subjects of a bill of particulars because the indictment and the discovery materials produced to her already provide sufficient detail to allow her to prepare her defense and the requests seek discovery of the government's trial strategy. [Id. at 6-10].

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court "may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "The purpose of a true bill of particulars is threefold: 'to inform the defendant of the charge against [her] with sufficient precision to allow [her] to prepare [her] defense, to minimize surprise at trial, and to enable [her] to plead double jeopardy in the event of a later prosecution for the same offense.'" United States v. Reddy, Criminal Action File No. 1:09-CR-0483-ODE/AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010), adopted as modified by 2010 WL 3211029, at *1 (N.D. Ga. Aug. 11, 2010) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)); see also United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981); United States v. Zellner, Criminal Indictment No. 1:09-CR-320-TCB-GGB, 2011 WL 530718, at *9 (N.D. Ga. Jan. 14, 2011), adopted by United States v. Chester, Criminal Action File No. 1:09-cr-320-TCB-GGB, 2011 WL 529952, at *1 (N.D. Ga. Feb. 4, 2011). Generalized discovery is not a valid reason for seeking a bill of particulars, Colson, 662 F.2d at 1391; United States v. Davis, 582 F.2d 947, 951 (5th Cir. 1978), and "[a] bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial," Zellner, 2011 WL 530718, at *9 (citation omitted). Further, a defendant is not entitled to a bill of particulars describing information which is already evident from other sources, such as elsewhere in the indictment or in discovery. United States v. Rosenthal, 793 F.2d

1214, 1227 (11th Cir. 1986), modified on other grounds by, 801 F.2d 378 (11th Cir. 1986); see also Reddy, 2010 WL 3210842, at *5.

The government maintains that it has provided "voluminous discovery," and with regard to Williams' request for the exact locations of the criminal conduct, the government asserts that she "already has this information" as "each of the transactions that constitute the offense conduct for the Hobbs Act extortion and drug trafficking counts were documented in FBI reports, already provided in discovery, [that] provide the precise addresses within the Northern District of Georgia where the bribe payments and sham drug deals occurred." [Doc. 427 at 6]. As for the amount of bribe payments and the official act, the government again asserts that this information is already available to her as "the FBI reports produced in discovery explicitly specify the amount of each cash bribe payment received by each defendant for each of the sham drug transactions that form the basis of each Hobbs Act count" and that "both the indictment and the discovery make clear that the official act for each Hobbs Act count was always the same: 'In exchange for payment, the correctional officer defendants agreed to wear their GDOC uniforms, or carry indicia of their statuses as GDOC officers.'"[13]   [Id. at 7-8 (citation omitted)].   The

---

[13] Williams asserts that the fact that the "individual officers were paid, simply does not answer the question as to whether there was an actual 'quid pro quo' for the alleged 'official act' of wearing the GDOC uniform–an essential element of the Hobbs Act violation." See [Doc. 435 at 6-7]. Williams points out that in her motion for a bill of particulars she "asked the government to specify the additional amount

government also asserts that "every meeting, phone call, or text message between the [confidential informant] and any of the 25 defendants in this case was recorded, preserved, and produced in discovery" and that Williams therefore already has the information regarding which defendants were sexually propositioned or offered other incentives by the confidential informant and which defendants initially

_____

of United States currency allegedly paid to her and/or attributable to her conduct for the 'official act'; as opposed to, the amount paid to her as per the original bargain wherein she agreed to transport drugs for money," which Williams contends was "an agreement that was made before the [confidential informant] unilaterally added the wearing of the uniform requirement to the scheme."   [Id. at 7 (emphasis omitted)].   In this respect, Williams argues that "if the government cannot return particulars as to what additional payment[] or establish that said payment was demanded as a condition precedent to her participating in the scheme, then the Hobbs Act counts must be dismissed due to the government's failure to allege the 'quid pro quo' element of the Hobbs Act offenses charged."   [Id.].   However, as previously discussed with respect to her motion to dismiss counts, these contentions concern matters of proof and whether the government can obtain a conviction, but not whether the indictment sufficiently charges Williams with attempted Hobbs Act extortion.   The indictment specifically charges that "[i]n exchange for payment the correctional officer defendants agreed to wear their GDOC uniforms, or carry indicia of their statuses as GDOC officers, and accompany the purported drug trafficker while he delivered purported narcotics to other purported drug traffickers, or personally transport the narcotics themselves."   [Doc. 1 at 3 ¶ 11].   And, the government states that the discovery provided to Williams "explicitly specif[ies] the amount of each cash bribe payment."   [Doc. 427 at 7-8].   This is sufficient to allow her to prepare her defense, to minimize surprise at trial, and to enable her to plead double jeopardy if she is later prosecuted for the same offense.   See United States v. Baitcher, Criminal Action File No. 1:11-CR-536-SCJ-AJB, 2013 WL 1501462, at *1 (N.D. Ga. Mar. 22, 2013), adopted by 2013 WL 1501454, at *1 (N.D. Ga. Apr. 11, 2013) (quoting Cole, 755 F.2d at 760) ("The purpose of a bill of particulars is threefold: 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.'").   Thus, Williams' argument is without merit.

refused to participate.[14]  [Id. at 8-9].  Thus, the Court finds that Williams' requests

contained in (a), (d), (g), and (h) are without merit since that information is already

available to her in the discovery material.  Rosenthal, 793 F.2d at 1227 (citation

omitted) (noting defendant not entitled to bill of particulars "with respect to

information that is already available through . . . the indictment or discovery and

inspection"); see also Colson, 662 F.2d at 1391; United States v. Leiva-Portillo, No.

1:06-CR-350-WSD, 2007 WL 1706351, at *14-15 (N.D. Ga. June 12, 2007) (denying

motion for bill of particulars where the government represented that it had provided

extensive discovery materials to defendant that were responsive to the requests

made and that discovery information "sufficiently advise[d] [d]efendant of the

specific conduct for which [he] is being prosecuted").[15]

---

[14] The government additionally provides that "the impeachment information sought by Williams regarding any defendant's sexual relations with the [confidential informant] is simply non-existent."  [Doc. 427 at 9].

[15] In her reply in support of her motion for a bill of particulars, Williams asserts that it "is not a sufficient response to a motion for a bill of particulars to point to the voluminous discovery already provided."  [Doc. 435 at 9 (citations and internal marks omitted)].  Williams cites cases from other circuits in support of her assertion, see [id. (citations omitted)]; however, as stated, the Eleventh Circuit has held that a defendant is not "entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection."  Rosenthal, 793 F.2d at 1227 (citing Colson, 662 F.2d at 1391); see also United States v. Melvin, 143 F. Supp. 3d 1354, 1383 (N.D. Ga. 2015) (agreeing with the magistrate judge that defendant's requests were "either already covered by the allegations contained in the indictment and the information provided in discovery, or they are beyond the proper scope of a bill of particulars"); Slawson, 2014 WL 5804191, at *12 (citations omitted); United States v. Smallwood, Criminal

Williams' request (e), that the government provide the facts supporting the allegations that the acts of extortion affected or would have affected interstate commerce, is likewise beyond the proper scope of a bill of particulars.  As the government correctly contends, "Williams is improperly seeking to uncover the government's trial strategy."  [Doc. 427 at 10].  Indeed, the government "is not required to include in the indictment every potential *legal theory* it may have as to how the [extortion] . . . affects commerce within the meaning of the Hobbs Act." United States v. Grant, Criminal Action No. 1:13cr107-MHT, 2013 WL 6080052, at *3 (M.D. Ala. Nov. 19, 2013), adopted at *1.  Nevertheless, the government points out that "the commerce nexus for an attempt or conspiracy under 18 U.S.C. § 1951 can be shown by evidence of a potential impact on commerce or by evidence of an actual, de minimus impact on commerce," [Doc. 427 at 10 (emphasis omitted) (citing United States v. Kaplan, 171 F.3d 1351, 1354-58 (11th Cir. 1999))], and that the Supreme Court has held that the "'production, possession, and distribution of controlled substances constitute a 'class of activities' that in the aggregate substantially affect commerce,'" [id. (quoting Taylor v. United States, 136 S. Ct. 2074, 2080 (2016))].  Because the indictment sets forth specific acts that the government asserts affected commerce, "a more precise bill of particulars is not necessary to

_____

Action File No. 1:13-cr-381-1-TCB, 2014 WL 3519195, at *25 (N.D. Ga. July 16, 2014), adopted at *1 (citation omitted).  Thus, the Court finds Williams' argument unavailing.

supply [Williams] with that information for the preparation of [her] defense or to minimize surprise at trial." Grant, 2013 WL 6080052, at *3 (citation omitted). "Thus, a motion for a bill of particulars is not an appropriate vehicle to compel the [g]overnment to provide a legal brief and detailed factual exposition as to how exactly it intends to establish that the [acts of extortion] constitute[] a 'minimal effect' on commerce." Id. (citation omitted).

Finally, with respect to Williams' request (b) that the government detail and clarify the meaning of the aiding and abetting allegations contained in counts 18, 20, and 22, the government argues that this request is improper because it seeks the government's trial strategy, but also responds that Williams was "both a recipient and provider of assistance to her co-defendants since she worked jointly with them to protect the sham drug transactions while in their prison guard uniforms." [Doc. 427 at 9 (emphasis omitted)]. In her reply in support of her motion, Williams argues that "the government's contention is clearly belied by the discovery in this case." [Doc. 435 at 4]. In particular, Williams understands from the discovery that "Travonne Ferrell allegedly aided and abetted her by recruiting her into engaging in the sham drug transactions" and that "she is charged with aiding and abetting co-defendants Minor and Fluellen by recruiting them," but she responds that, contrary to the government's response, "nothing in the indictment or the discovery indicates or establishes the aiding and abetting theory the other way around," and that the FBI

44

reports, provided in discovery, in fact, "clearly demonstrate that at each occasion of the alleged drug transaction [Williams] and her co-defendants acted separately and on their own behalf, as opposed to 'jointly.'"  [Id. at 4-5].  Based on the arguments regarding this request, it appears that the discovery has not provided Williams sufficient clarity as to the essential facts surrounding the aiding and abetting allegations given the multiple co-defendants and their relative roles in the offenses beyond who recruited whom, [id.], and to the extent the government contends that the aiding and abetting involved more than mere recruitment, as it appears to argue, [Doc. 427 at 9], it is **ORDERED** to direct Williams to the places in the discovery where the essential facts surrounding the aiding and abetting allegations are disclosed, within **fourteen (14) days** of the entry of this Order, and to the extent the essential facts have not been disclosed in discovery, the government is **ORDERED** to provide Williams with a bill of particulars detailing the aiding and abetting allegations in counts 18, 20, and 22, within **twenty-one (21) days** of the entry of this Order. See United States v. Menjivar, Criminal Action No. 1:10-CR-86-11-RWS-ECS, 2011 WL 10647325, at *1 (N.D. Ga. Nov. 29, 2011), adopted by 2013 WL 2112210, at *2 (N.D. Ga. May 14, 2013).  Accordingly, Williams' motion for a bill of particulars

is **GRANTED IN PART** with respect to providing the particulars of the aiding and abetting allegations in the manner stated, but **DENIED** in all other respects.[16]

## D.   Motion to Reveal Confidential Informants, [Doc. 279]

Williams has moved for disclosure of the names and location of confidential informants in this case. [Doc. 279]. Specifically, Williams seeks to know the "precise number, identity and present location of informants or co-operating individuals utilized in the investigation of this case, who have actively participated in any of the acts forming the basis for the above-styled indictment. [Id. at 1]. Williams also seeks the "specifics of any deals, payments, agreements, incentives and remuneration which the government or any agent on the government's behalf has

---

[16] In her reply in support of the motion for a bill of particulars, Williams moves to preclude the government from varying the responses it provided in its response to her motion. [Doc. 435 at 2]. Specifically, she seeks an order precluding the government from varying its responses to her requests for the location of the charged offenses, victim of extortion, traffic stops, and sexual propositions. [Id. at 2-4]. However, the government's response demonstrated, and Williams has not contested, see [id.], that the particulars sought on these topics are available through the discovery materials, and thus, they are not the proper subject of a bill of particulars. Moreover, even if they were, Rule 7(f) provides that "[t]he government may amend a bill of particulars subject to such conditions as justice requires." Fed. R. Crim. P. 7(f). Accordingly, Williams is not entitled to the specific relief requested in her reply. However, if the government plans to present any evidence that deviates from the representations made in its response to the motion for a bill of particulars regarding the location of the charged offenses, the victim of the extortion, traffic stops, or sexual propositions involving the confidential informant, it shall provide Williams written notice amending its response by specifying the change in facts or circumstances that differ from its response as soon as practicable, but not less than one week prior to trial.

offered and/or provided to said informants in exchange for their cooperation in this case." [Id.].  Williams also requests all files and records relating to the confidential informants, including the case file, the pedigree file, contracts with any agency, payment records, contact and surveillance logs, and polygraph results.  [Id. at 7-8]. In the alternative, Williams asks that the government be required to "reveal the number of confidential informants/participants used in its investigation, the specific information they provided in regards to their knowledge of the alleged drug trafficking and any information provided by them regarding [Williams] in any form, any plea agreements or other promises of reward the informants/participants were offered in exchange for the information provided, and any impeachment information known by the government regarding its informants," [id. at 9], and she also asks that this Court conduct an *in camera* hearing to determine whether she is entitled to the aforementioned information pertaining to the confidential informants, [id. at 10-11].  Williams contends that the informants' participation in this case makes them more than "mere tipsters" and that disclosure of their identities is required under Roviaro v. United States, 353 U.S. 53 (1957).  [Id. at 3-5].

The government opposes the motion, arguing that while Williams' references confidential informants in her motion, "this case derives from an operation conducted by the [FBI] in which a single confidential human source (the 'CHS'), posing as a high-level drug trafficker, paid cash bribes to the defendants to transport

and deliver narcotics to the Northern District of Georgia."[17]  [Doc. 399 at 4].  The

government asserts that the <u>Roviaro</u> balancing test does not apply because it intends

to call the confidential informant as a witness if this case proceeds to trial, and it has

agreed to disclose the confidential informant's identity at least one week before trial.

[<u>Id.</u> at 6-9].  It further asserts that, even if <u>Roviaro</u> does apply, Williams has failed to

show how the confidential informant's probable testimony would aid her defense,

and even if she could make such a showing, the government's interest in ensuring

---

[17] The government asserts that "the covert audio and video evidence makes clear, it was the same CHS[, identified as CHS 21959 in the discovery,] who conducted each and every transaction forming the basis of each count in the indictment," and that the "'other drug traffickers' with whom the CHS was supposedly working are non-existent."  [Doc. 399 at 6 n.3].  The government acknowledges in its response that there was "one early deal, on September 18, 2014, that involved a second female CHS (identified as 'CHS 35535' in the discovery) who was involved with the main CHS," but the government points out that "the female CHS's role was minor and involved a transaction (Counts 7 and 8) preceding [] Williams'[] involvement in this case."  [<u>Id.</u> at 6-7 n.3].  Williams references an "individual or individuals caught with contraband in the prison system who initially informed the government that he/she/they were utilizing correctional officers to transport contraband to, and/or bring contraband inside, the walls of the institutions."  [Doc. 279 at 2]; <u>see also</u> [<u>id.</u> at 5].  However, "this source related to conduct (Count one) that is [likewise] unrelated to [] Williams."  [Doc. 399 at 7 n.3].  While Williams alleges that this information goes "directly to an entrapment defense," [Doc. 279 at 6], as stated, whether Williams is entitled to raise an entrapment defense is an improper consideration at this point in the proceeding.  <u>See</u> <u>Leiva-Portillo</u>, 2007 WL 1706351, at *5 (citations omitted) ("[U]ntil a defense is properly raised, a trial court is not required to conduct an in camera hearing, compel the [g]overnment to disclose the identity of an informant, or permit access to the informant.").  "Regardless, [the government states that] these two other minor CHS's will also be called as witnesses at trial if the defendants to whom their testimony relates end up going to trial, so any questions regarding these topics may be asked of them then."  [Doc. 399 at 7 n.3].

witness safety outweighs Williams' interests in disclosure of the confidential informant's identity.  [Id. at 9-11].

"The Government has a limited privilege to withhold the identity of a confidential informant."  United States v. Najera-Perez, Civil Action No. 1:12-CR-232-2-CAP, 2014 WL 888651, at *26 (N.D. Ga. Mar. 6, 2014), adopted at *1 (citing Roviaro, 353 U.S. at 60-61; United States v. Flores, 572 F.3d 1254, 1265 (11th Cir. 2009) (per curiam)).  In Roviaro, the Supreme Court held that "[w]here the disclosure of a confidential informer's identity or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the privilege must give way." Id. (alteration in original) (internal quotations omitted) (quoting Flores, 572 F.3d at 1265).  "Courts analyzing Roviaro, however, have determined that the holdings of Roviaro do not apply when the informants will testify at trial." Id.  "As indicated in subsequent Supreme Court precedent, '[t]he issue of evidentiary law in Roviaro was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does not call as a trial witness.'" Id. (alteration in original) (quoting Banks v. Dretke, 540 U.S. 668, 697 (2004)).  Thus, Roviaro is not applicable to this case since the government has indicated that it intends to call the confidential informant as a witness during the trial and will disclose the identity of the informant at least one week prior to the trial

and provide any related Jencks Act, Brady[18], and Giglio[19] materials related to the confidential informant.  See id. (citations omitted); see also United States v. Pineda, Criminal Case No. 1:11-CR-00006-CAP-JFK, 2012 WL 2906758, at *44-46 (N.D. Ga. June 4, 2012), adopted by 2012 WL 2907447, at *1 (N.D. Ga. July 16, 2012); United States v. Elder, Criminal Action File No. 1:10-CR-132-RWS/AJB, 2010 WL 5656687, at *6-7 (N.D. Ga. Dec. 16, 2010), adopted in part by 2011 WL 294507, at *7 (N.D. Ga. Jan. 27, 2011).

"Because *Roviaro* does not require disclosure of the informant['s]  identi[ty] and information at this juncture, [Williams] cannot access this information unless some other authority requires early production of this information."  Najera-Perez, 2014 WL 888651, at *27.  The government has agreed to disclose the confidential informant's identity and provide Jencks Act, Brady,[20] and Giglio information at least one week before trial, "thereby alleviating the concerns raised by the Supreme Court in *Roviaro*."  Id. (citation omitted).  Moreover, Brady and Giglio do not support Williams' demand for immediate disclosure of the confidential informant's identity and impeaching information because such materials "only must be disclosed in time for it to be put to effective use in cross examining witnesses at trial."  Id. at *28

---

[18] Brady v. Maryland, 373 U.S. 83 (1963).

[19] Giglio v. United States, 405 U.S. 150 (1972).

[20] The government asserts that it is "currently in compliance with *Brady*, and will remain so throughout the remainder of this case."  [Doc. 399 at 9 n.5].

(citing <u>Flores v. Satz</u>, 137 F.3d 1275, 1278-79 (11th Cir. 1998) (per curiam); <u>United States v. Bailey</u>, 123 F.3d 1381, 1399-1400 (11th Cir. 1997); <u>United States v. Bueno-Sierra</u>, 99 F.3d 375, 379 (11th Cir. 1996) (per curiam); <u>Pineda</u>, 2012 WL 2906758, at *45).  "Time after time, the Eleventh Circuit has concluded that there was no constitutional violation even when *Brady* or *Giglio* materials are supplied after the start of the trial."  <u>Id.</u>  (citing <u>Bailey</u>, 123 F.3d at 1399-1400; <u>Bueno-Sierra</u>, 99 F.3d at 379; <u>United States v. Burroughs</u>, 830 F.2d 1574, 1578-79 (11th Cir. 1987)).

"The principles of law espoused in *Brady* and *Giglio* do not otherwise provide, however, a defendant with a constitutional right to discovery in a criminal case." <u>Id.</u> at *27 (citation omitted).  "The Government does not have a general duty to disclose a list of its witnesses or information about those witnesses prior to trial." <u>Id.</u> (citing <u>United States v. Johnson</u>, 713 F.2d 654, 659 (11th Cir. 1983)).  "Also, the Federal Rules of Criminal Procedure do not 'requir[e] the Government to supply witness lists or witness statements until that witness has testified on direct examination, unless such information is required sooner by *Brady* or *Giglio*.'" <u>Id.</u> (alteration in original) (quoting <u>Elder</u>, 2010 WL 5656687, at *5).  Moreover, despite not being obligated to do so, since the government has agreed to disclose the identity of the informant and provide any related Jencks Act, <u>Brady</u>, and <u>Giglio</u> materials related to the confidential information as least one week prior to trial, the Court finds that this production will allow Williams an adequate opportunity to

prepare her defense.   See id. at *26; Pineda, 2012 WL 2906758, at *44-46.

Accordingly, Williams' "Preliminary Motion to Reveal Confidential Informants and

To Disclose Any Deals or Agreements Offered in Exchange of Their Cooperation,"

[Doc. 279], is **DENIED**.[21]

### III.   CONCLUSION

For the foregoing reasons, Williams' motion for a bill of particulars, [Doc. 278],

is **GRANTED IN PART** and **DENIED IN PART**, her motion to reveal confidential

informants, [Doc. 279], is **DENIED**, and her motion in limine and to sever, [Doc.

277], is **DEFERRED** to the District Judge, and it is **RECOMMENDED** that her

motions to dismiss counts 19, 21, and 23 and to dismiss the prosecution, [Docs. 276

& 295], be **DENIED**, and her alternative request to allow an entrapment defense is

**DEFERRED** to the District Judge.

─────────────────

[21] In her motion to reveal confidential informants, Williams moves "for a bill of particulars requiring the government, whether or not their identities are revealed, to indicate exactly how many confidential informants were utilized with regard to these twenty-five (25) defendants and which instances are attributable to each particular person." [Doc. 279 at 7]. Williams has not shown that the number of informants and which instances are attributable to each person are necessary to inform her of the charges against her "with sufficient precision to enable [her] to prepare [her] defense or avoid surprise. Neither [are] they shown to be necessary for pleading acquittal or conviction in bar of further prosecution for the same offense," United States v. Gorel, 622 F.2d 100, 104 (5th Cir. 1979), particularly in light of the government's response that only one confidential informant was involved in the criminal acts alleged in the counts against Williams. Thus, Williams' request is due to be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case, other than as noted below.[22]

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 19th day of October, 2016.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[22] Counsel for defendant Chelsey Mayweather was allowed to withdraw today, see [Doc. 453], and attorney Vernon Smith, who previously was appointed to represent her, [Doc. 152], will be reappointed as her counsel, [Doc. 453]. Counsel for four other defendants, Travonne Ferrell, Jeremy Fluellen, Charisma Glenn, and Tramaine Tucker, have indicated that they are not prepared to proceed to trial at this time, but in the absence of any pending motions from these defendants, this case is certified as ready for trial as to all defendants.