IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

UNITED STATES OF AMERICA

v.

TONIA WILLIAMS,

     Defendant.

CRIMINAL ACTION

NUMBER 3:16-cr-00003-TCB

## O R D E R

This case comes before the Court on Magistrate Judge Russell G. Vineyard's Final Report and Recommendation (the "R&R") [455], which grants in part and denies in part Defendant Tonia Williams' motion for a bill of particulars, [278], denies her motion to reveal confidential informants, [279], recommends denying her motion to dismiss counts 19, 21, and 23, and her motion to dismiss the prosecution against her, [276 & 295], and defers her alternative request to allow an entrapment defense to the district judge. Williams has filed objections to the R&R [507].

## I.      Legal Standard on Review of a Magistrate Judge's R&R

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)).[1] Where a party objects to an R&R, a district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990). Those portions of the R&R to which no objection is made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).[2]

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by the Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing continuing validity of *Nettles*).

[2] *Macort* addressed only the standard of review applied to a magistrate judge's factual findings, but the Supreme Court has held that there is no reason for a district court to apply a different standard of review to a magistrate judge's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410.

After conducting a complete and careful review of the R&R, the district judge may accept, reject or modify the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1)(C). The district judge also has discretion to decline to consider arguments that were not raised before the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload

---

circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases).

of the district court." *Id.* (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

## II.   Analysis

On January 6, 2016, a federal grand jury in the Northern District of Georgia returned a seventy-five count indictment against twenty-five defendants, all but one of whom were correctional officers employed by the Georgia Department of Corrections ("GDOC"). The indictment followed an investigation by the Federal Bureau of Investigation ("FBI") in which defendants allegedly accepted thousands of dollars in bribe payments from a purported drug trafficker, who actually was an undercover FBI confidential informant, in return for their assistance, while wearing their GDOC uniforms, with and protection of the delivery of multiple kilograms of sham cocaine and methamphetamine.

The indictment alleges that on or about February 26, 2015, March 6, 2015, and March 13, 2015, Tonia Williams, one of the correctional officers, and other co-Defendants named in the indictment "believed that they were providing protection to a high-level drug trafficker who was transporting multiple grams of cocaine and methamphetamine in

the Locust Grove area, in the Northern District of Georgia, and
elsewhere . . . ." [1] at ¶¶ 10–11, 11–14. The indictment further charges
that Williams and the co-Defendants, "in exchange for payment, agreed
to wear their GDOC uniforms, or carry indicia of their statuses as
GDOC officers, and accompany the purported drug trafficker while he
delivered purported narcotics to other purported drug traffickers, or
personally transport the narcotics themselves." Id. at ¶¶ 33–38.

It is further alleged that Williams, along with the other co-
Defendants, "believed their uniformed presence would assist the drug
trafficker with his transport of narcotics by" providing protection all
while in their GDOC uniforms or while carrying indicia of their statuses
as GDOC officers. Id. at ¶¶ 12–13. The indictment also charges that
Williams and her co-Defendants accepted "thousands of dollars in bribe
payments from the purported drug trafficker" in return for their
actions. Id. at ¶ 14.

Defendant Williams is charged with three counts of attempted
Hobbs Act extortion under color of official right, in violation of 18 U.S.C.
§ 1951(a), and three counts of attempted distribution of cocaine and

methamphetamine. [1] at ¶ 12–14. She filed a motion to dismiss the attempted Hobbs Act extortion charges, [276], and a motion to dismiss the indictment based on outrageous government conduct and, in the alternative, to allow an entrapment defense, [295], as well as a motion for a bill of particulars, [278], and a motion to reveal confidential informants, [279].

On October 19, 2016, Judge Vineyard issued an R&R. [455]. It granted in part and denied in part Williams's motion for a bill of particulars [278], denied her motion to reveal confidential informants [279], recommended denying her motion to dismiss counts 19, 21, and 23 [276], denied her motion to dismiss prosecution on grounds of outrageous conduct [295], and deferred her alternative request to allow an entrapment defense to the district judge. [295].

## A.   William's Motion to Dismiss the Hobbs Act Counts in the Indictment

Williams first objects to the magistrate judge's recommendation to deny her motion to dismiss counts 19, 21, and 23 of the indictment. These counts charge her with attempted Hobbs Act extortion under color of official right, in violation of 18 U.S.C. § 1951(a). The R&R

6

determined that the allegations of the indictment track the language of the statute, covering every essential element of attempted Hobbs Act extortion, and include a statement of facts that clearly provides Williams with adequate notice of the charges that she must defend against. [455] at 9–10. Williams argues that the contested counts are deficient with respect to several elements of the charged offense of attempted Hobbs Act extortion.

### 1. Defendant's Uniformed Presence Sufficiently States the Element of "Official Act"

The R&R determined that the allegations in the indictment that Williams and each co-Defendant in the contested counts "wore their GDOC uniforms while accompanying a purported drug trafficker in return for bribe payments in order to provide protection from other law enforcement officers, provide sufficient details to 'warrant an inference that the jury found probable cause to support' the 'official action' and 'quid pro quo' elements of the charge." *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998). Williams objects to this finding on the grounds that the magistrate judge ignored the rule that "[t]he omission [of an essential fact of the crime] cannot be supplied by the intendment

7

or implication, and the charge must be made directly, and not inferentially, or by way of recital." *United States v. Seher*, 562 F.3d 1344 (11th Cir. 2009) (citing *United States v. Hess*, 124 U.S. 483 (1888). The Court does not agree.

For one, the Eleventh Circuit has stated that an indictment is not deficient on Fifth Amendment grounds if the facts alleged can warrant an inference to support all of the elements required for a charge. *Fern*, 155 F.3d at 1325. Furthermore, the *Seher* case cited by Williams dealt with any conflict between the Eleventh Circuit's decision in *Fern* and the Supreme Court's decision in *Hess*—the case cited in *Seher*. The Court stated that "the Court in *Hess* was addressing whether the indictment sufficiently alleged the factual circumstances comprising a mail fraud scheme, not the legal elements of the offense." *Seher*, 562 F.3d at 1358.

Similar to the Eleventh Circuit in *Seher*, *Hess* does not alter the analysis in this case because the Court is concerned with whether the indictment supports the legal elements (i.e., "official act") of a Hobbs

Act extortion charge. Therefore, the case law cited by Williams does not persuade the Court.

Williams also objects to the magistrate judge's determination that the Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), is not dispositive of her claims. Williams contends that the language in her indictment does not fall within *McDonnell*'s more restrictive definition of an "official act." Contrary to the R&R, Williams argues that the indictment does not sufficiently charge her with Hobbs Act extortion because *McDonnell* purportedly limits the government's discretion in defining what constitutes an "official act."

Williams cites the R&R's reliance on the fact that in *McDonnell*, the Court used the definition of an "official act" taken from the federal bribery statute to define the "official act" element of a Hobbs Act extortion, only because the parties in that case agreed to do so. Williams does not state that this conclusion was incorrect, but instead argues that here, Williams and the Government have also agreed to the definition of "official action" espoused in *McDonnell*. However, the

parties' agreement as to *McDonnell*'s definition of "official act" does not require dismissal of the indictment.

For one, the decision in *McDonnell* still did not concern the sufficiency of charges in an indictment. Instead, it dealt with an error in jury instructions as to bribery charges. Furthermore, the Court does not find that *McDonnell* warrants a conclusion that the indictment charges here were insufficient for purposes of a motion to dismiss.

First, the indictment specifically alleges that Williams and each co-defendant in the contested counts "unlawfully obtained property from another, in the form of United States currency not otherwise due to them, with that person's consent, in exchange for assisting with a purported drug transaction, said consent having been induced under color of official right." [1] at ¶ 34–38.

Second, the additional facts alleged in the indictment—which are incorporated by reference into these counts—that the defendants wore their GDOC uniforms while accompanying a purported drug trafficker in return for bribe payments in order to provide protection from other law enforcement officers, provide sufficient details to "warrant an

10

inference that the jury found probable cause to support" the "official action" and "quid pro quo" elements of the charge. *Fern*, 155 F.3d at 1325. *McDonnell* does not compel the dismissal of the indictment because at this stage in the proceedings, the indictment charges provide sufficient notice to Williams of the alleged "official act."

Williams also contends that the R&R does not contemplate two issues raised in her complaint. According to Williams, the indictment does not include any allegation that the victim—i.e., FBI source— reasonably believed that Williams had the power to avoid law enforcement interdiction simply by wearing her prison guard uniform. [507] at 25 (citing *United States v. Wingo*, 723 F. Supp. 798 (N.D. Ga. 1989). Because the inquiry is whether the government official "exploited the victim's reasonable belief that the official had such power," Williams contends that the Government failed to allege the "official act" element. *Id*. This argument is unavailing because the indictment also includes the allegation that the purported drug trafficker paid Williams to wear her uniform and protect the drugs involved in the transactions. Therefore, the "victim" would not have paid the money if the source did

not believe that Williams had the power to influence other law enforcement officers.

Furthermore, Williams contends that while the rule of lenity applies to the use of ambiguous allegations in an indictment to establish a Hobbs Act violation, no such ambiguity exists "from the face of the indictment" here. For the reasons stated above, the indictment does not require a "constrained interpretation" of the term "official act" as contemplated by *McDonnell*.

First, at this stage in the proceeding, *McDonnell* does not affirmatively answer the question of whether the indictment adequately charges attempted Hobbs Act extortion under color of official right. Instead, "the full import of *McDonnell* will be . . . debated and addressed at . . . trial . . . ." [455] at 17. Second, the Court is unable to find that Williams "clearly lacks fair notice" as to the "official act" at issue in which she is accused of engaging. *See United States v. Slawson*, No. 1:14-cr-186, 2014 WL 5804191, at *5 (N.D. Ga. Nov. 7, 2014) ("In judging the sufficiency of an indictment, courts are cautioned to use a broad and enlightened standpoint of common sense and right reason

12

rather than [a] narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding."). The allegations provide that not only did Williams accept bribes in exchange for assisting with the purported drug transaction, but she also wore her GDOC uniform while accompanying the purported drug trafficker. This sufficiently warrants an inference of official act to satisfy this element of the Hobbs Act extortion charge.

### 2.   The Hobbs Act Counts Are Not Duplicitous

Williams also objects to the R&R's recommendation because counts 19, 21, and 23 are duplicitous by each charging her and a co-Defendant with the offense of Hobbs Act extortion. Fed. R. Crim. P. 8(b) states that the joinder of two defendants in the same count does not render the count duplicitous because an "indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Williams contends that the R&R failed to demonstrate how she and her co-defendant in the same charge

participated in the "same act and transaction" pursuant to Rule 8(b). This argument is without merit.

The seventy-five-count indictment involves a single investigation involving twenty-five defendants accepting bribe payments from a purported drug trafficker in return for their assistance with and protection of the delivery of the purported drugs. The indictment is based on a series of events and transactions that all relate to the overall investigation. The individual events and acts by the various defendants constitute the overarching operation. It is evident that Williams and the co-defendants participated in at least the "same series of acts or transactions" by assisting the purported drug trafficker with assistance and protection of the delivery of the purported drugs.

Second, contrary to Williams' assertions, the dangers attributable to a duplicitous count are not present here, especially in light of her trial being severed from the other defendants. *See United States v. Schlei*, 122 F.3d 944, 977 (11th Cir. 1997) (describing the dangers associated with duplicitous counts). First, the jury will be deciding unanimously whether Williams violated § 1951(a) independently from

14

the other defendants in the indictment. Second, Williams will not be prejudiced by double jeopardy because each count only charges her with one attempted Hobbs Act extortion under color of right. Finally, any concern with the admissibility of evidence between Williams and co-Defendants is not an issue with this severed trial.

For these reasons, the Court adopts the R&R's recommendation dismissing Williams's motion to dismiss counts 19, 21, and 23.

**B.    Williams' Motion to Dismiss the Prosecution on Grounds of Outrageous Government Conduct and in the Alternative Motion to Allow Entrapment Defense**

**1.    Outrageous Government Conduct**

Williams contends that the magistrate judge erred in recommending denial of her motion to dismiss based on outrageous government conduct. Williams claims that the "degree of governmental participation in the offenses charged in this indictment went beyond mere entrapment and amounted to outrageous government conduct." [295] at 17. Williams refers specifically to the Government's targeting of economically depressed prison workers who had not previously been

engaged in criminal activity by tempting them to do so with the offer of tremendous economic reward.

Williams first argues that the magistrate judge erred in stating that "the Eleventh Circuit has never acknowledged the existence of the outrageous government conduct doctrine." [507] at 5. However, the R&R does not say this. Instead, the R&R states, and is correct, that "no case has been dismissed by the Supreme Court or the Eleventh Circuit based on a finding of outrageous government conduct." [455] at 27. The Eleventh Circuit recognizes the defense of outrageous government conduct, but the defense has not been the basis for a dismissal of an indictment in the Eleventh Circuit.

Second, Williams claims that the magistrate judge mistakenly relied on Williams's recruitment of other prison guards to join in the criminal conduct. [455] at 30. Williams argues that this was incorrect as a matter of law because in evaluating a claim of outrageous government conduct, the Court is to focus upon the conduct of the Government without regard to the alleged actions of the defendant. *See United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991). Even if the R&R

16

impermissibly focused on Williams's recruitment alone, it is clear that the R&R's conclusion was based on the totality of the circumstances. Further, Williams's recruitment of other officers shows that Williams did not only provide "meager assistance," as Williams contends in her next objection. Recruiting Defendants to assist in the operation shows that the Government was not running the entire operation but instead was relying on others to help with security while the transaction took place.

Further, Williams emphasizes that substantial evidence belies the magistrate judge's finding that the Government did not "[run] the entire operation with only meager assistance from the defendants" or that the Government only provided "an opportunity" for Williams to participate in criminal activity. [455] at 30–31. The Court agrees with the R&R and finds that Williams's participation in the sham drug transactions "was the result of [her] activity, not the Governments." *Durham*, 106 F. Supp. 3d 1301, 1307 (N.D. Ga. 2015). Williams has failed to show that the Government "ran the entire operation with only meager assistance from the defendants." *Tobias*, 662 F.2d at 386.

17

Williams and the other Defendants supplied their uniformed presence to assist and protect the transportation of the drugs. *See States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998) (noting that even though the Government supplied the drugs, this does not "necessarily constitute misconduct"). Providing the uniforms and assistance were an important part of the sham drug operation, and Williams provided both.

Finally, Williams also bases her objection on the magistrate judge's reliance on *Sanchez*, 138 F.3d at 1410. She contends that this case is distinguishable from *Sanchez*.  The Court does not agree. Williams argues that she was involved due to instigation from the Government. However, Williams was recruited, not by the confidential informant, but by a co-Defendant. In addition, Williams contends that the Government provided her with everything necessary to participate in the entire operation. However, as shown above, Williams provided the security and the uniform, which were both integral aspects of the operation.

18

For the foregoing reasons, the Court finds that the R&R's conclusion was correct and is not persuaded that the Government's actions in the instant case warrant the dismissal of the prosecution.

### 2.   Entrapment Defense

In the alternative to her claim of outrageous conduct, Williams objects to the magistrate judge's ruling that Williams's entrapment defense is premature and should be deferred to the district judge to be decided at trial.

In accordance with the R&R's recommendation, the Court does not find that the evidence entitles Williams to a pre-trial finding of entrapment as a matter of law. *See United States v. McGill*, No. 1:14-cr-167-WSD, 2014 WL 4829303, at *5 (N.D. Ga. Sept. 29, 2014) ("An entrapment defense is a question for the jury, unless the evidence is so clear and convincing that it may be ruled on by a trial judge as a matter of law."); *see also United States v. Williams*, No. 6:13-cr-26-Orl-36TBS, 2014 WL 117091, at *4 (M.D. Fla. Jan. 13, 2014) (emphasizing that no court in this Circuit has found entrapment as a matter of law before a case goes to trial). The Court also agrees with the magistrate judge's

19

recommendation that the defense of entrapment is premature. *See McGill*, 2014 WL 4829303, at *5 (citing *United States v. Gates*, 351 F. App'x 362, 366 (11th Cir. 2009) ("[Generally,] entrapment is not an appropriate issue to consider in a pre-trial motion to dismiss the indictment.").

### C.   Williams's Motion In Limine and for Severance of Defendants

Williams also filed a motion in limine and for severance of Defendants and counts. [277]. Williams is scheduled for her own individual trial before this Court. Because she is currently severed from all remaining Defendants and counts, there are no *Bruton* issues. Williams's objections to this aspect of the R&R are therefore moot.

## III.   Conclusion

For the foregoing reasons, the Court adopts as its Order the R&R. [455]. Williams's motion to dismiss counts 19, 21, and 23 [276] is denied, her motion to dismiss prosecution on grounds of outrageous Government conduct [295] is denied, her motion in limine, motion to sever counts, and motion to sever Defendants [277] is denied as moot, and her motion for an entrapment defense is premature [295].

20

IT IS SO ORDERED this 16th day of March, 2017.

_____
Timothy C. Batten, Sr.
United States District Judge